**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

H. CHARLES TELLIS,
      *Plaintiff-Appellant,*

v.

ALASKA AIRLINES, INC.,
      *Defendant-Appellee.*

No. 04-35137

D.C. No.
CV-02-01407-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted
June 8, 2005—Seattle, Washington

Filed July 12, 2005

Before: Procter Hug, Jr., David R. Thompson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Thompson

**COUNSEL**

Peter G. Cogan, Seattle, Washington, for the plaintiff-appellant.

Jeffrey A. James, Bellevue, Washington, for the defendant-appellee.

**OPINION**

THOMPSON, Senior Circuit Judge:

H. Charles Tellis appeals the district court's summary judgment in favor of Alaska Airlines on his Family Medical Leave Act ("FMLA") claim, 29 U.S.C. § 2601 *et seq*. Tellis argues he raised a genuine issue of material fact as to whether his cross-country trip to retrieve the family vehicle during his wife's late-stage pregnancy difficulties, and his calling her on the phone during the three and a half days he was away, were "to care for" his wife under the FMLA and thus a protected absence from his employment. We conclude as a matter of law that Tellis's trip and phone calls were not "to care for" his wife. Thus, his absence from work during that time was not protected by the FMLA, and we affirm the district court's summary judgment in favor of Alaska Airlines.

I

Alaska Airlines employed Tellis in Seattle as a maintenance mechanic. His wife was having difficulties with her pregnancy, so on the morning of July 4, 2000, he told his supervisor he needed to take a couple of weeks off. His supervisor suggested he take FMLA leave and directed him to the Health Benefits office to obtain the necessary forms. Instead of showing up for his scheduled shift that evening, Tellis left a leave request form, which requested holiday and vacation leave for July 5, 6, and 7. On July 5, Tellis contacted the Benefits office to request FMLA leave, and the office sent him the appropriate forms.

On July 6, Tellis's vehicle broke down. He owned another vehicle in Atlanta so he decided to fly there and drive the vehicle back to Seattle. He departed for Atlanta the evening of July 6 and arrived back in Seattle the evening of July 10. While he was gone, his sister-in-law stayed with his wife, and on July 9 his wife gave birth to a baby girl. While he was gone, he called his wife regularly on his cell phone from the road.

Tellis's next scheduled shift after his three days of requested leave was July 11. When Tellis was absent without having obtained the required advance approval, Alaska Airlines attempted without success to contact him. Alaska Airlines decided to terminate Tellis on July 18, 2000, for his unexcused absences. Tellis and his union grieved the termination. In response, Alaska Airlines offered to reinstate Tellis if he would accept the placement of a disciplinary letter in his file. The letter would remain in Tellis's file for one year, and he would not be permitted to grieve it. Under his collective bargaining agreement, Tellis would normally be allowed to grieve a disciplinary letter. Tellis refused the offer, and after arbitration before the System Board of Adjustment, he filed the present lawsuit.

The district court granted Alaska Airlines's summary judgment motion, concluding that during Tellis's FMLA leave, he did not "care for" his wife; thus, he breached that leave, and as a result Alaska Airlines could insist, as a condition of continuing his employment, that he accept the disciplinary letter in his file. When he refused that offer, Alaska Airlines had the right to terminate him, which it did. Tellis appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## II

**[1]** Under the FMLA, an eligible employee is entitled to up to 12 weeks of leave during a 12-month period "to care for" a family member with a serious health condition. 29 U.S.C. § 2612(a)(1)(C). Tellis argues he cared for his wife consistent with the FMLA because his trip to Atlanta and back to retrieve the family car provided psychological reassurance to her that she would soon have reliable transportation, and his phone calls to her while he drove back to Seattle provided moral support and psychological comfort. We disagree and hold that as a matter of law, providing care to a family member under the FMLA requires some actual care which did not occur here.

**[2]** The Department of Labor's regulations implementing the FMLA explain that the phrase "to care for" a family member

> encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

29 C.F.R. § 825.116(a). Interpreting this rule, we have previously stated that caring for a family member with a serious health condition "involves some level of participation in ongoing treatment of that condition." *Marchisheck v. San Mateo County*, 199 F.3d 1068, 1076 (9th Cir. 1999).

**[3]** Courts in this Circuit and other jurisdictions that have concluded a particular activity has constituted "caring for" a family member under the FMLA have done so only when the employee has been in close and continuing proximity to the ill family member. In *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1087-88 (9th Cir. 2002), we held that a son who moved to his father's town for a month to help him cope with depression raised a genuine issue of material fact as to whether he did so "to care for" his father. The son's activities included talking with his father daily, performing household chores, and driving his father to the counselor. The court concluded the son "participated in the treatment through both his daily conversations with his father . . . and his constant presence in his father's life." *Id.* at 1088. Courts from other jurisdictions have held similarly. *See, e.g., Brunelle v. Cytec Plastics, Inc.*, 225 F. Supp. 2d 67, 77 & n.13 (D. Me. 2002) (denying employer's summary judgment motion when son spent "the entire day providing care and comfort to his critically ill father"); *Briones v. Genuine Parts Co.*, 225 F. Supp. 2d 711, 715-16 (E.D. La. 2002) (denying employer's summary judgment motion when employee took leave to care for his three healthy children while his wife cared for his hospitalized fourth child).

One state court decision against an employee is also instructive. In *Pang v. Beverly Hospital, Inc.*, 94 Cal. Rptr. 2d 643, 648-49 (Cal. Ct. App. 2000), a California Court of Appeal held an employee was not protected under California's state law counterpart to the FMLA. The employee took leave to help her ailing mother move from her two-story home to a one-level apartment to minimize the need for at-home assistance. The court stated:

Pang's admissions make clear that she was not there to directly, or even indirectly, provide or participate in medical care for her mother. Instead, she was there to help pack her mother's belongings and tell the movers where to place her mother's furniture. While Pang's presence may have provided her mother some degree of psychological comfort, this was merely a collateral benefit of activities not encompassed by the Commission's regulations.

. . . .

The same is true of the federal FMLA regulations . . . .

*Id.* at 649 (citing 29 C.F.R. § 825.116 and

*Marchisheck*, 199 F.3d at 1076).

**[4]** Although we need not embrace the breadth of these out-of-circuit decisions to address Tellis's case, the decisions do support our conclusion that Tellis's activities cannot be considered "caring for" his wife. Instead of participating in his wife's ongoing treatment by staying with her, he left her for almost four days. Tellis claims his trip provided psychological reassurance to his wife, but he did not travel to Atlanta to participate in his wife's medical care. Having a working vehicle may have provided psychological reassurance; however, that was merely an indirect benefit of an otherwise unprotected activity — traveling away from the person needing care. Tellis also claims his phone calls provided moral support and comfort, but his phone calls during his trip did not constitute participation in ongoing treatment. Common sense suggests that the phone calls Tellis made do not fall within the scope of the FMLA's "care for" requirement. The language of the decisions *supra* makes this clear: the *Scamihorn* court relied on the son's "daily conversations" *and* "constant presence."

282 F.3d at 1088. *Brunelle* relied on the son's spending the "entire day" with his father. 225 F. Supp. 2d at 77 n.13.

### III

**[5]** For the foregoing reasons, we hold that Tellis's cross-country trip to retrieve the family car, and phone calls to his wife while he was away, cannot as a matter of law be considered "caring for" his wife under the FMLA. Consequently, his absence from employment during that period was not protected by the FMLA. We therefore affirm the district court's decision granting Alaska Airlines summary judgment.

**AFFIRMED**.