# United States Court of Appeals
## For the First Circuit

No. 10-1169

MARIA LUCIA TAYAG,

Plaintiff, Appellant,

v.

LAHEY CLINIC HOSPITAL, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,

Boudin and Howard, Circuit Judges.

Monica J. Molnar with whom Peter H. Noone and Avery Dooley Post & Avery, LLP were on brief for appellant.
Brian E. Lewis with whom David J. Kerman and Jackson Lewis LLP were on brief for appellee.

January 27, 2011

**BOUDIN**, <u>Circuit Judge</u>.  Maria Lucia Tayag ("Tayag") was terminated by her employer, Lahey Clinic Hospital, Inc. ("Lahey"), while taking an unapproved seven-week leave to accompany her husband, Rhomeo Tayag ("Rhomeo"), on a spiritual healing trip.  The district court denied her claims against Lahey on summary judgment, including one under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (2006), and she now seeks review.

The pertinent background events are largely not in dispute.  Rhomeo suffers from serious medical conditions, including gout, chronic liver and heart disease, rheumatoid arthritis, and kidney problems that led to a transplant in 2000.  Tayag has looked after him: transporting him to medical appointments, helping him with household activities, preparing his food, aiding him in moving around the house, providing medication, and giving psychological comfort.

Tayag began working for Lahey as a health management clerk in 2002 and received positive performance reviews.  In 2003, she became eligible for leave under Lahey's FMLA policy, and until July 2006 Lahey consistently approved her requests for leave, which typically lasted one or two days.  In May 2006, without claiming FMLA leave, Tayag used vacation time to travel with Rhomeo to Lourdes, France--a major site for Roman Catholic pilgrimage and reputed miraculous healings.

In June 2006, Tayag submitted a vacation request form for August 7 to September 22, 2006; her supervisor said this would leave the department with inadequate coverage but, as Tayag had indicated that her husband would be needing medical care, her supervisor provided the paperwork for an FMLA leave request. On July 8, Tayag requested FMLA leave to assist Rhomeo while he traveled, but did not inform Lahey that the travel was for a spiritual pilgrimage to the Philippines. Nor did she provide Lahey with any contact information to reach her during the trip.

On July 11, 2006, Rhomeo underwent an angioplasty procedure. That month, Tayag spoke to Susan Olsen--Lahey's benefits administrator--about the FMLA request, and Olsen requested new FMLA certification from Rhomeo's doctor. In early August, Tayag gave Olsen a note and then a certification from Rhomeo's primary care physician, Stephen Dong; the note stated that Rhomeo's liver, kidney, and heart diseases "significantly affect his functional capacity to do activities of daily living" and advised that Tayag receive medical leave "to accompany Mr. Tayag on any trips as he needs physical assistance on a regular basis."

Tayag also provided Olsen with the fax number of her husband's cardiologist so Lahey could send the doctor a certification form for completion. The cardiologist returned the form on August 8, 2006, stating that Rhomeo was "presently . . . not incapacitated" and that Tayag would not need leave. Olsen

mailed Tayag letters on August 10 and 14 notifying her that the leave was unapproved, and Lahey representatives left phone messages at Tayag's home on August 8 and 17. Tayag did not receive any of these messages because she was in the Philippines from August 7 to September 22. Receiving no response, Lahey then sent a letter, dated August 18, terminating her employment.

In the Philippines, during August and early September 2006, the Tayags went to Mass, prayed, and spoke with the priest and other pilgrims at the Pilgrimage of Healing Ministry at St. Bartholomew's Parish. From September 8 to 22, the Tayags visited other churches and friends and family. While in the Philippines, Rhomeo received no conventional medical treatment and saw no doctors or health care providers. Tayag assisted him by administering medications, helping him walk, carrying his luggage, and being present in case his illnesses incapacitated him.

On April 30, 2008, Tayag filed suit against Lahey alleging a number of claims,[1] one being that her termination violated the FMLA; only the FMLA claims are the subject of this appeal. After discovery, Lahey moved for summary judgment on all claims; Tayag moved for partial summary judgment on the FMLA claims. The district court granted summary judgment in favor of Lahey on all claims, determining as to the FMLA claims that the

---

[1]Tayag also alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (2006), Title VII of the Civil Rights Act of 1964, id. §§ 2000e to 2000e-17, and state law.

Tayags' trip was not "protected" under the statute because it was effectively a vacation.  Tayag v. Lahey Clinic Hosp., Inc., 677 F. Supp. 2d 446, 452 (D. Mass. 2010).  This appeal followed.

Orders granting summary judgment are reviewed de novo. Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). Here, the issues turn on the interpretation of the FMLA.  Tayag makes two claims--interference with substantive rights and retaliation for the exercise of those rights--that both hinge upon whether the FMLA protects the type of trip taken by the Tayags. See 29 U.S.C. § 2615(a); Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331-32 (1st Cir. 2005); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-61 (1st Cir. 1998).

The FMLA entitles employees to twelve workweeks annually "to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  The leave "may be taken intermittently . . . when medically necessary," id. § 2612(b)(1), and if the leave "is foreseeable based on planned medical treatment," the employee must make a reasonable effort to schedule the treatment so that it does not unduly disrupt the employer and must provide the employer with thirty days' notice unless impracticable, id. § 2612(e)(2).

Tayag describes the travel as a series of "healing pilgrimages" with incidental socializing.  This comports with her deposition, the district court made no finding directly to the

contrary, and we will accept her characterization. Tayag properly does not claim that caring for her husband would itself be protected leave under the FMLA if the seven-week trip was for reasons unrelated to medical treatment of Rhomeo's illnesses.[2] So, if the focus is on substantive protection, the result depends on whether a "healing pilgrimage" comprises medical care within the meaning of the FMLA.

Under the statute and associated regulations, the answer is no. The statute defines "health care provider" as "a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or . . . any other person determined by the Secretary to be capable of providing health care services." 29 U.S.C. § 2611(6). Similarly, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice, or residential medical care facility; or . . . continuing treatment by a health care provider." Id. § 2611(11).

---

[2]See Tellis v. Alaska Airlines, Inc., 414 F.3d 1045, 1048 (9th Cir. 2005); Marchisheck v. San Mateo Cnty., 199 F.3d 1068, 1076 (9th Cir. 1999), cert. denied, 530 U.S. 1214 (2000). The inclusion of "psychological comfort and reassurance," 29 C.F.R. § 825.116, in the definition of care cannot extend to accompaniment of an ill spouse on lengthy trips unrelated to medical care. (All citations to the Code of Federal Regulations are to the July 1, 2006, revision operative at the time of Tayag's FMLA leave request.)

Faith healing is addressed solely in the regulation identifying others "capable of providing health care services," which includes "Christian Science practitioners" subject to certain conditions. 29 C.F.R. § 825.118. Christian Scientists reject ordinary medical care as defined by the statute and so, as to a Christian Scientist patient, there is no duplication either for government insurance programs or for employers providing FMLA leave. Tayag's husband gets ordinary medical care, and she has taken full advantage of the FMLA to provide assistance to him in connection with that care.

Further, Tayag does not invoke the Christian Science exception to cover her situation--her husband is not a Christian Scientist--but as the basis for a constitutional argument. Thus she asserts summarily that, given the exception granted for Christian Science practitioners,

> it would be an unconstitutional distinction between religions to state that a Catholic priest is not covered. Both religiously affiliated healing programs are aimed at treating the illness and providing psychological comfort.

This is hardly a serious treatment of a complex issue and is not adequate to preserve the claim on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990). Even if the argument had been preserved, it would not be likely to prevail in any form that assisted Tayag.

Thus, when <u>Children's Healthcare is a Legal Duty, Inc.</u> v. <u>Vladeck</u>, 938 F. Supp. 1466 (D. Minn. 1996), struck down a counterpart Christian Scientist exception relating to Medicare and Medicaid, <u>id.</u> at 1486, Congress adopted a new provision extending the benefits of protection to care from "religious nonmedical health care institutions" of "patients who choose to rely solely upon a religious method of healing and for whom the acceptance of medical health services would be inconsistent with their religious beliefs," 42 U.S.C. § 1395x(ss)(1). The courts upheld this solution.[3]

Even if a court felt free to impose such an extension without legislation, it would do Tayag no good: she does not claim that Rhomeo's religion forbids ordinary medical care, and she has already taken FMLA leave a number of times to assist him in connection with receiving such care. And it is hard to see how more would be required: distinguishing among religions as such may well be suspect; limiting FMLA coverage for faith healing trips to those whose faith makes no other demands for medical assistance is not self-evidently an improper discrimination. <u>See</u> note 3, above.

Tayag's claim of entitlement to FMLA leave also falls on an independent ground. Lahey required certification by a health care provider for FMLA leave, which is permitted. 29 U.S.C.

---

[3]<u>E.g.</u>, <u>Kong</u> v. <u>Scully</u>, 341 F.3d 1132, 1133-34 (9th Cir. 2003); <u>Children's Healthcare is a Legal Duty, Inc.</u>, v. <u>Min De Parle</u>, 212 F.3d 1084, 1088 (8th Cir. 2000), <u>cert. denied</u>, 532 U.S. 957 (2001).

§ 2613. For intermittent leave, the certification must include among other information "a statement that the employee's intermittent leave . . . is necessary for the care of the . . . spouse who has a serious health condition, or will assist in their recovery, and the expected duration and schedule of the intermittent leave." Id. § 2613(b)(1)-(4)(A), (7).

Intermittent leave periods may be of any length (less than the twelve-week total allotment), 29 C.F.R. § 825.203(a), (d), but the requested seven-week leave was different from the brief leaves taken by Tayag over the previous four years and suggested by earlier certifications. When Dr. Dong provided a new certificate in August 2006, he included "coronary artery disease" for the first time as a listed condition, but said only that Rhomeo's incapacity would occur "intermittently" and for his "lifetime" and provided no explanation as to why a seven-week leave would be needed. The omissions gave Lahey "reason to doubt the validity of the certification," 29 U.S.C. § 2613(c)(1), permitting Lahey to designate another health care provider for a second opinion, id.[4]

---

[4]Tayag argues that the second opinion was invalid because "[t]here is no justification . . . supporting Lahey's assertion that it had a right to insist on a certification from a particular doctor." However, the statute states that the second health care provider will be "designated or approved by the employer," 29 U.S.C. § 2613(c)(1), saying only that the provider "shall not be employed on a regular basis by the employer," id. § 2613(c)(2). No other argument is made to us against the second certificate. Cf. 29 C.F.R. § 825.308(e) (limiting second opinions on "recertifications").

That certification, from Tayag's cardiologist, stated that Rhomeo was "not incapacitated" and Tayag did not require leave, although her presence could "possibly" provide psychological comfort.  Since nothing in Dr. Dong's certificate provided a basis for a seven-week leave and the cardiologist had disavowed the need for any leave, Lahey was justified in denying FMLA leave.  See, e.g., Stoops v. One Call Commc'ns, Inc., 141 F.3d 309, 314 (7th Cir. 1998).

Even assuming dubitante that Dr. Dong's certification adequately supports the leave, the statutory procedure in the event of a conflict between certifying doctors would require joint agreement on a third health care provider to give a binding final opinion.  29 U.S.C. § 2613(d).  At most Tayag might have been entitled to a third opinion and "a reasonable opportunity to cure any . . . deficiency" in certification raised by Lahey, 29 C.F.R. § 825.305(d), but Tayag's departure and failure to provide contact information blocked such processes.

In sum, Tayag's seven-week absence was not protected leave under the FMLA.  Tayag's second claim--retaliation--is both underdeveloped and confusingly framed; she says that the discharge was retaliation for requesting and taking leave.  Insofar as she is asserting that she was discharged for taking leave, the claim fails because her leave was not protected.  See Orta-Castro v. Merck,

Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 113-14 (1st Cir. 2006).

Requesting leave is also an FMLA-protected right, see 29 C.F.R. § 825.220(a)(1), for which retaliation conceivably could be wrongful even where the leave itself was unprotected, see Colburn, 429 F.3d at 336 n.10. But the discharge here was expressly for taking improper leave--not for filing a leave request--and no rational jury could find that the asserted and adequate reason given was pretextual. See Hodgens, 144 F.3d at 166.

Affirmed.