# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2551

_____

David E. Miller,                              *
                                              *
            Appellant,                        *
                                              *
      v.                                      *
                                              *
State of Nebraska Department of               *
Economic Development, an agency of            *
the State of Nebraska; Richard Baier,         *
Individually and in his official capacity     *
as Director of the Department of              *
Economic Development for the State of         *
Nebraska; Gary Hamer, Individually            *    Appeal from the United States
and in his official capacity as Deputy        *    District Court for the
Director of the Department of                 *    District of Nebraska.
Economic Development for the State of         *
Nebraska; Steve Charleston,                   *    [UNPUBLISHED]
Individually and in his official capacity     *
as Deputy Director for the Community          *
Rural Development Division of the             *
Department of Economic Development            *
for the State of Nebraska; Don Fertig,        *
Individually and in his official capacity     *
as Legal Counsel for the Department of        *
Economic Development for the State of         *
Nebraska,                                     *
                                              *
            Appellees.                        *

_____

Submitted:  January 11, 2012
Filed:  April 16, 2012
_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.
_____

PER CURIAM.

David E. Miller worked for the Nebraska Department of Economic Development ("NDED") from 1986 until his discharge in June 2007.  Miller's father, Richard, was diagnosed with prostate cancer in 2005 and with stage IV terminal lung cancer in 2006.  Miller regularly obtained leave from work to attend Richard's medical appointments throughout 2005 and 2006.  On April 5, 2007, Dr. Douglas Fiedler, Richard's pulmonologist, predicted that Richard had a sixty- to ninety-day life expectancy and recommended that the family look into hospice care.  Soon thereafter, Miller and Richard began to disagree on how to proceed with Richard's care.  It is undisputed that Miller stopped attending Richard's medical appointments beginning on April 17, but Miller subsequently missed at least twenty-three days of work during April and May 2007, frequently with little or no explanation.  On June 15, NDED terminated Miller's employment, citing his unexcused absences.  Miller contested the termination through a collective bargaining agreement grievance process, explaining that he suffered a "complete physical and mental breakdown" beginning on April 17 from dealing with his father's medical condition.  After an arbitrator rejected his wrongful discharge grievance, Miller brought this lawsuit for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, alleging that he was absent to care for Richard. Concluding that no reasonable jury could find that Richard was unable to care for his

own needs or that Miller used his absences to provide Richard with necessary care, the district court[1] granted NDED's motion for summary judgment. We affirm.

We review *de novo* a district court's grant of summary judgment. *Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010). "[W]e will affirm if, upon review, we agree that there are no genuine issues of material fact and that [the movant] is entitled to judgment as a matter of law." *Thorson v. Gemini, Inc.*, 205 F.3d 370, 375-76 (8th Cir. 2000) (citing Fed. R. Civ. P. 56(c)). We must "(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, [and] (3) give the nonmovant the benefit of all reasonable inferences." *Roberson*, 602 F.3d at 933 (quoting *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

On appeal, Miller primarily challenges the district court's determination that no reasonable jury could conclude that Miller was needed to care for his father in April and May 2007. The FMLA does not define the phrase "needed to care for," but both parties rely on regulations issued by the Department of Labor. *See* 29 C.F.R. § 825.124 (2009) (formerly 29 C.F.R. § 825.116) (defining "needed to care for" as including physical and psychological care where, because of a serious health condition, a family member is "unable to care for his or her own basic medical, hygienic, or nutritional needs or safety"). Miller raises three challenges to the district court's conclusion that no reasonable jury could find that Miller was "needed to care for" Richard.

---

[1]The Honorable Laurie Smith Camp, Chief United States District Judge for the District of Nebraska.

Miller contends that a reasonable jury could conclude that Richard was unable to care for his own basic medical, hygienic, or nutritional needs based on Miller's affidavit, in which he claims that Richard "would often need assistance" using the bathroom, dressing, and standing up, and based on Dr. Fiedler's declaration that he "would have certified that . . . Miller was needed to care for Richard" in April or May 2007 if he had been asked. Miller contends that the district court improperly disregarded this evidence in favor of the testimony of Lois Reed, Richard's companion of over twenty-one years, and her daughter that Richard did in fact care for his own medical, hygienic, and nutritional needs during that period.

Miller's affidavit does not create a direct factual conflict with the testimony of Lois and her daughter that, when he was with them, Richard was able to bathe, shampoo and comb his hair, brush his teeth, take his medication, dress himself, feed himself, use the telephone, shop for groceries, and use the restroom, all without assistance. While Miller claims to have provided assistance to Richard at times for some of these activities, even taking all of Miller's factual assertions as true, they do not contradict the testimony of Lois and her daughter as to what Richard was able to do on a daily basis during April and May 2007.[2] During that period, Richard operated a motor vehicle, attended social functions and church services, went to restaurants, and even danced. Moreover, Richard spent ten days away from Miller traveling with Lois in Oklahoma and Texas in May 2007. During that trip, Richard attended a pool party, walked around a lake, went shopping, and attended commencement exercises for Lois's granddaughter. Richard took several more trips with Lois in June to attend a wedding, visit a friend for Father's Day, and vacation in Omaha. Miller did not accompany Richard and Lois on any of these trips and has offered no evidence to

_____

[2]On appeal, Miller "explicitly denies that [Lois] Reed was present on a daily basis in April and May." However, the affidavit page Miller cites in his brief states only that Miller "frequently saw Ms. Reed at Richard Miller's condominium, but not every day." It does not state that Miller was with Richard all day, every day, to observe whether Lois was present on each given day.

contradict Lois and Lois's daughter's accounts of Richard's activities and ability to care for himself. Because Miller asserts no personal knowledge of what Richard was able to do in his absence, his affidavit does not contradict Lois's testimony that Richard was able to care for his own basic medical, hygienic, and nutritional needs during those times. *See Doza v. Am. Nat'l Ins. Co.*, 314 F.2d 230, 232 (8th Cir. 1963) (noting that an affidavit "must show that the affiant possesses the knowledge asserted" (quoting *Sprague v. Vogt*, 150 F.2d 795, 800 (8th Cir. 1945))).

Dr. Fiedler's declaration similarly fails to create a genuine factual conflict with the testimony of Lois and her daughter. Dr. Fiedler stated in his declaration that he observed that Richard appeared weak at a three-month follow-up visit on April 5, 2007. Without mentioning any subsequent consultations, Dr. Fiedler then offered his opinion that Richard "would periodically be unable to care for his own basic medical, hygienic or nutritional needs in April and May of 2007." However, Dr. Fiedler's declaration merely establishes that Dr. Fiedler would have expected Richard to require assistance. While we have no doubt that someone with stage IV cancer who was a candidate for hospice care might be *expected* to require assistance with his basic needs, that does not necessarily create a genuine question as to whether an individual patient *actually* required such assistance. In this case, the record shows that Richard attended to his own basic medical, hygienic, and nutritional needs while he was traveling and whenever he was with Lois. The Fiedler declaration does not state or imply that the experiences of Lois and her daughter with Richard were implausible or contrary to medical evidence, and thus does not create a genuine conflict with Lois's testimony about Richard's actual capabilities. Furthermore, Miller concedes that Richard engaged in a variety of activities during that period, consistent with Lois's testimony regarding Richard's active lifestyle. Neither Miller's affidavit nor Dr. Fiedler's declaration creates a genuine factual conflict with the testimony of Lois and her daughter that Richard was able to care for his own basic medical, hygienic, or nutritional needs when he was with them in April and May 2007.

Miller's affidavit and Dr. Fiedler's declaration also fail to establish that Miller's absences from work were taken for the purpose of providing necessary assistance to Richard, even assuming such assistance was "periodically" necessary. Dr. Fiedler's declaration does not address how Miller actually used his absences from work. Miller vaguely states in his affidavit that in April and May 2007, he "would help" Richard with certain activities, but Miller does not specify how frequently he provided this assistance, whether he provided this assistance during his absences from work, or what portion of his absences he actually dedicated to providing such assistance. Furthermore, the reason Miller initially cited for his absences during his grievance process—that Miller himself had suffered "a complete physical and mental breakdown"—undermines Miller's claim now that he was providing necessary assistance to Richard at the same time. Where a conclusory affidavit raises dubious claims that are contradicted by the affiant's previous position on the same issue, we have held that "[a] properly supported motion for summary judgment is not defeated by self-serving affidavits." *See Bacon v. Hennepin Cnty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (quoting *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008)). Thus, Miller has not raised a genuine question of fact as to whether Miller actually provided Richard with necessary care during his absences from work in April and May 2007.

Miller also contends that the district court erroneously ignored the psychological comfort that Miller testified he provided to Richard and that Dr. Fiedler declared Richard "would have" needed. *See* 29 C.F.R. § 825.124(a) (necessary care "includes providing psychological comfort and reassurance which would be beneficial to a . . . parent with a serious health condition who is receiving inpatient or home care"). Miller primarily relies on *Scamihorn v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 282 F.3d 1078 (9th Cir. 2002), in which Scamihorn moved in with his father at the recommendation of the father's psychologist to involve family members in the recovery process of the father's

"significant depressive illness." *Id.* at 1080-84. The Ninth Circuit concluded that Scamihorn had "raise[d] a genuine issue regarding whether his activities were necessary because his father was at times unable to care for some of his own basic needs." *Id.* at 1088. In contrast, Miller introduced no comparable evidence that Richard was receiving "inpatient or home care," *see* 29 C.F.R. § 825.124(a), or that his absences from work were for the purpose of providing psychological care to Richard as part of the ongoing treatment of Richard's serious health condition, *see Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1076 (9th Cir. 1999) (employee's participation in "ongoing treatment" of family member's serious health condition is required to qualify for FMLA leave). Moreover, as explained above, Miller failed to raise a jury question as to whether he used his absences from work to provide Richard with necessary care. Furthermore, Miller could not have used some of his absences to provide psychological care to Richard because they took place while Richard was traveling with Lois. *See Tellis v. Alaska Airlines, Inc.*, 414 F.3d 1045, 1047 (9th Cir. 2005). Without evidence that Miller used his absences to provide Richard with psychological care as part of Richard's ongoing inpatient or home care treatment, *Scamihorn* is inapplicable, and we reject this argument.

Finally, Miller contends that his father needed him to arrange hospice care. *See* 29 C.F.R. § 825.124(b) (necessary care includes making "arrangements for changes in care, such as transfer to a nursing home"). Although Dr. Fiedler's declaration establishes that hospice care would have been a viable option if Richard had desired it, Miller's own testimony establishes that his father opposed hospice care, and there is no evidence that such care was necessary despite Richard's opposition. Furthermore, apart from his own vague and conclusory statements, Miller offered no specific facts to show that he devoted significant amounts of time during his absences to arrange hospice care for Richard. Accordingly, we reject this argument.

For the foregoing reasons, we affirm.

_____