In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-1445

BEVERLY BALLARD,

*Plaintiff-Appellee,*

*v.*

CHICAGO PARK DISTRICT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10-C-1740 — **Edmond E. Chang**, *Judge.*

ARGUED JANUARY 15, 2014 — DECIDED JANUARY 28, 2014

Before FLAUM, EASTERBROOK, and ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge.* The Family and Medical Leave Act gives eligible employees a right to twelve workweeks of leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). This case is about what qualifies as "caring for" a family member under the Act. In particular, it is about whether the FMLA applies when an employee requests leave

so that she can provide physical and psychological care to a terminally ill parent while that parent is traveling away from home. For the reasons set forth below, we conclude that such an employee is seeking leave "to care for" a family member within the meaning of the FMLA.

## I. Background

Beverly Ballard is a former Chicago Park District employee. In April 2006, Beverly's mother, Sarah, was diagnosed with end-stage congestive heart failure and began receiving hospice support through Horizon Hospice & Palliative Care. Beverly lived with Sarah and acted as her primary caregiver; among other things, she cooked her mother's meals, administered insulin and other medication, drained fluids from her heart, bathed and dressed her, and prepared her for bed. In 2007, Sarah and a Horizon Hospice social worker met to discuss Sarah's end-of-life goals. Sarah said that she had always wanted to take a family trip to Las Vegas. The social worker was able to secure funding from the Fairygodmother Foundation, a nonprofit that facilitated these sorts of opportunities for terminally ill adults. The six-day trip was scheduled for January 2008.

Ballard requested unpaid leave from the Chicago Park District so that she could accompany her mother to Las Vegas. (The parties dispute many particulars of Ballard's request, including whether Ballard gave the Park District sufficient notice, but these issues are not germane to this appeal and we will ignore them.) The Park District ultimately denied the request, although Ballard maintains that she was not informed of the denial prior to her trip.

Ballard and her mother traveled to Las Vegas as planned, where they spent time together and participated in typical tourist activities. Beverly continued to serve as her mother's caretaker during the trip. In addition to performing her usual responsibilities, Beverly drove her mother to a hospital when a fire unexpectedly prevented them from reaching their hotel room, where Sarah's medicine was stored.

Several months later, the Chicago Park District terminated Ballard for unauthorized absences accumulated during her trip. Ballard filed suit under the FMLA. The Park District moved for summary judgment, arguing in part that Ballard did not "care for" her mother in Las Vegas because she was already providing Sarah with care at home and because the trip was not related to a continuing course of medical treatment. The district court denied the motion, explaining that "[s]o long as the employee provides 'care' to the family member, where the care takes place has no bearing on whether the employee receives FMLA protections." 900 F. Supp. 2d 804, 812 (N.D. Ill. 2012). The Park District moved for an interlocutory appeal.

## II. Discussion

We begin with the text of the statute: an eligible employee is entitled to leave "[i]n order to care for" a family member with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C). The Park District does not dispute that Sarah Ballard suffered from a serious health condition. Instead, it claims that Beverly did not "care for" Sarah in Las Vegas. It would have us read the FMLA as limiting "care," at least in the context of an away-from-home trip, only to services provided in connection with ongoing medical treatment.

One problem with the Park District's argument is that § 2612(a)(1)(C) speaks in terms of "care," not "treatment." The latter term does appear in other subsections of § 2612, but Ballard does not rely on those provisions for her leave, and the Park District does not argue that they are implicated in this case. *See* 29 U.S.C. § 2612(b)(2) (permitting an employer to temporarily transfer an employee seeking intermittent leave "that is foreseeable based on planned medical treatment"); *id.* § 2612(e)(2) (requiring an employee who requests leave to care for a family member "based on planned medical treatment" to provide the employer with notice and attempt to schedule the treatment so as not to disrupt the employer's operations). Furthermore, the Park District does not explain why participation in ongoing treatment is required when the employee provides away-from-home care, but not when she provides at-home care. Certainly we see no textual basis for that distinction in the statute.

Another problem is that the FMLA's text does not restrict care to a particular place or geographic location. For instance, it does not say that an employee is entitled to time off "to care *at home* for" a family member. The only limitation it places on care is that the family member must have a serious health condition. We are reluctant, without good reason, to read in another limitation that Congress has not provided.

Still, the FMLA does not define "care," so perhaps there is room to disagree about whether Ballard can be said to have cared for her mother in Las Vegas. We therefore turn to the Department of Labor's regulations to clear away any lurking ambiguity. *See Price v. City of Fort Wayne*, 117 F.3d 1022, 1023–24 (7th Cir. 1997). There are no regulations specifically interpreting 29 U.S.C. § 2612(a)(1)(C). There are, how-

ever, regulations interpreting a closely related provision concerning health-care provider certification. *See* 29 U.S.C. § 2613(b)(4)(A) (describing what is required for a medical provider to certify that "the eligible employee is needed to care for" a family member "for purposes of leave under section 2612(a)(1)(C) of this title"); *cf. White v. Scibana*, 390 F.3d 997, 1002 (7th Cir. 2004) (noting the "general rule … that identical words used in different parts of the same statute are presumed to have the same meaning"). Those regulations state:

> **What does it mean that an employee is "needed to care for" a family member?**
>
> (a) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
>
> (b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

> (c) An employee's intermittent leave or a re-
> duced leave schedule necessary to care for a
> family member includes not only a situation
> where the family member's condition itself is
> intermittent, but also where the employee is
> only needed intermittently—such as where
> other care is normally available, or care re-
> sponsibilities are shared with another member
> of the family or a third party.

29 C.F.R. § 825.116 (2008).[1]

We see nothing in these regulations to support the Park District's argument, either. The first sentence defines "care" expansively to include "physical and psychological care"— again without any geographic limitation. The only part of the regulations suggesting that the location of care might make a difference is the statement that psychological care "includes providing psychological comfort and reassurance to [a family member] … who is *receiving inpatient or home care.*" 29 C.F.R. § 825.116(a) (2008) (emphasis added). Even so, as the district court correctly observed, this example of what constitutes psychological care does not purport to be exclusive. Moreover, this example only concerns psychological care. The examples of what constitutes physical care use no location-specific language whatsoever. *See id.* (physical care "includes situations where … the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety").

---

[1] The Department of Labor has amended its regulations since Ballard filed her lawsuit; the relevant passage can now be found, with minor modifications, at 29 C.F.R. § 825.124.

Sarah's basic medical, hygienic, and nutritional needs did not change while she was in Las Vegas, and Beverly continued to assist her with those needs during the trip. In fact, as the district court observed, Beverly's presence proved quite important indeed when a fire at the hotel made it impossible to reach their room, requiring Beverly to find another source of insulin and pain medicine. Thus, at the very least, Ballard requested leave in order to provide physical care. That, in turn, is enough to satisfy 29 U.S.C. § 2612(a)(1)(C).

The Park District nevertheless argues that any care Ballard provided in Las Vegas needed to be connected to ongoing medical treatment in order for her leave to be protected by the FMLA. But, like the statute itself, the regulations never use the term "treatment" in their definition of care. Rather, they speak in terms of basic medical, hygienic, and nutritional needs—needs that, as in this case, do not change merely because a person is not undergoing active medical treatment. And it would be odd to read an ongoing-treatment requirement into the definition of "care" when the definition of "serious health condition" explicitly states that active treatment is *not* a prerequisite. *See* 29 C.F.R. § 825.114(a)(2)(iv) (2008) (stating that a patient with a terminal illness may have a serious health condition so long as she is "under the continuing supervision of … a health care provider," even if she is "not … receiving active treatment").

In support of its ongoing-treatment argument, the Park District principally relies on out-of-circuit case law construing 29 U.S.C. § 2612(a)(1)(C). First, it cites a pair of Ninth Circuit cases holding that "caring for a family member with a serious health condition 'involves some level of participation in ongoing treatment of that condition.'" *Tellis v. Alaska*

*Airlines, Inc.*, 414 F.3d 1045, 1047 (9th Cir. 2005) (quoting *Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1076 (9th Cir. 1999)). *Tellis* involved an employee who flew cross-country to pick up a car and drive it back to his pregnant wife; *Marchisheck* involved an employee who brought her son to the Philippines because she worried that his social environment in Los Angeles was unhealthy. Next, the Park District cites a First Circuit case about an employee who took leave to accompany her seriously ill husband on a "healing pilgrimage" to the Philippines. *Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788 (1st Cir. 2011). Before considering whether the pilgrimage qualified as medical care under the FMLA, the *Tayag* court noted that the employee "properly does not claim that caring for her husband would itself be protected leave" if the pair traveled "for reasons unrelated to medical treatment of [her husband's] illnesses." *Id.* at 791 & n.2 (citing *Tellis* and *Marchisheck*).

We respectfully part ways with the First and Ninth Circuits on this point.[2] The only one of these cases that purports to ground its conclusion in the text of the statute or regulations is *Marchisheck*. *See* 199 F.3d at 1076 ("The relevant administrative rule … suggests that 'caring for' a child with a 'serious health condition' involves some level of participation in ongoing treatment of that condition."). However, as explained above, we do not see how that conclusion follows. The relevant rule says that, so long as the employee attends to a family member's basic medical, hygienic, or nutritional needs, that employee is caring for the family member, even if

---

[2] Because this opinion creates a split between circuits, we circulated it in advance of publication to all judges of this court in regular active service, pursuant to Circuit Rule 40(e). None voted to hear the case en banc.

that care is not part of ongoing treatment of the condition. Furthermore, none of the cases explain why certain services provided to a family member at home should be considered "care," but those same services provided away from home should not be. Again, we see no basis for that distinction in either the statute or the regulations.

At points in its briefing, the Park District describes Ballard's travel as a "recreational trip" or a "non-medically related pleasure trip." It also raises the specter that employees will help themselves to (unpaid) FMLA leave in order to take personal vacations, simply by bringing seriously ill family members along. So perhaps what the Park District means to argue is that the real reason Beverly requested leave was in order to take a free pleasure trip, and not in order to care for her mother. Whether that sort of argument is borne out by the record—which suggests that Sarah arranged the trip with her social worker as part of her end-of-life hospice planning, that Beverly consulted with Sarah's doctor about what would be required on the trip, and that Beverly did in fact provide care in Las Vegas—is not for us to decide at this stage. However, we note that an employer concerned about the risk that employees will abuse the FMLA's leave provisions may of course require that requests be certified by the family member's health care provider. *See* 29 U.S.C. § 2613. And any worries about opportunistic leave-taking in this case should be tempered by the fact that this dispute arises out of the hospice and palliative care context.

If Beverly had sought leave to care for her mother in Chicago, her request would have fallen within the scope of the FMLA. So too if Sarah had lived in Las Vegas instead of with her daughter, and Beverly had requested leave to care for

her mother there. Ultimately, other than a concern that our straightforward reading will "open the door to increased FMLA requests," the Park District gives us no reason to treat the current scenario any differently. Yet even if we credit the Park District's policy concern, "[d]esire for what we may consider a more sensible result cannot justify a judicial re-write" of the FMLA. *Gleischman Sumner Co. v. King, Weiser, Edelman & Bazar*, 69 F.3d 799, 803 (7th Cir. 1995) (Flaum, J., concurring).

### III. Conclusion

We AFFIRM the judgment of the district court.