In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1053

SUZAN GIENAPP,

*Plaintiff-Appellant,*

*v.*

HARBOR CREST, a not-for-profit corporation, and MYRA CHATTIC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 11 C 50325 — **Frederick J. Kapala**, *Judge.*

ARGUED MAY 27, 2014 — DECIDED JUNE 24, 2014

Before POSNER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Suzan Gienapp worked at Harbor Crest, a residential nursing care facility in Fulton, Illinois. In January 2011 she told Myra Chattic, its top manager, that she needed time off to care for her daughter, who was undergoing treatment for thyroid cancer. Chattic granted leave under the Family and Medical Leave Act. Employ-

ees are entitled to as much as 12 weeks' unpaid leave annually to care for children with serious health conditions. 29 U.S.C. §2612(a)(1). Harbor Crest acknowledges that Gienapp's daughter had a serious health condition, a term defined in §2611(11). While on leave, Gienapp mailed in an FMLA form, leaving blank a question about the leave's expected duration.

Harbor Crest did not ask her to fill in the blank on the form, nor did it pose written questions as the 12-week period progressed. (The parties debate whether Harbor Crest asked for a return date by phone or through Gienapp's sister; for current purposes, we must accept Gienapp's position that it did not. The absence of a written request is undisputed.) A physician's statement on the form said that the daughter's recovery was uncertain, and that if she did recover she would require assistance at least through July 2011. Chattic inferred from this that Gienapp would not return by April 1, her leave's outer limit, and in mid-February Chattic hired someone else in her stead. When Gienapp reported for work on March 29, Chattic told her that she no longer had a job. After the exhaustion of administrative remedies, this litigation followed. The district court granted defendants' motion for summary judgment, ruling that Gienapp had forfeited her rights under the FMLA by not telling Harbor Crest exactly how much leave she would take.

The statute requires notice to the employer of the need for leave. Gienapp gave notice; Chattic granted leave; Harbor Crest knew that it was governed by the FMLA. What Gienapp did not do was provide a date when she expected to return to work, though the form called for that information.

Because her daughter's status was changeable, Gienapp could not have given a firm date; the Department of Labor's regulations call her situation "unforeseeable" leave. The daughter might die soon, and then Gienapp could return to work; or she might live longer (as she did; her cancer is in remission) but need more care than other members of the family could provide. If that occurred, the family might or might not hire a live-in nurse to handle the daughter's needs. The date on which a medical professional would replace Gienapp's assistance, or care might become unnecessary, could not be known in January 2011.

That left two possibilities: Gienapp might have said something like "I will return no later than April 1, and earlier if possible" or something like "I will stay with my daughter as long as necessary, even if that means giving up my job, but will return by April 1 if things work out." As we understand Harbor Crest's position, putting either of these statements on the form would have complied with the FMLA's notice requirement and thus held Gienapp's job open. Yet neither of these statements would have given Harbor Crest materially more information than the blank box, plus the physician's statement describing the daughter's medical status. It is hard to see why omitting something obvious should have such a striking legal effect—certainly not when Harbor Crest could and should have asked.

Foreseeable leave is governed by 29 C.F.R. §825.302, which directs employees to tell their employers how much leave they need and adds that an employer must inquire further if an employee's statement is inadequate. 29 C.F.R. §825.302(c). We discuss the notice system of §825.302 in *Righi v. SMC Corp.*, 632 F.3d 404 (7th Cir. 2011). (To be more pre-

cise, *Righi* discusses the 2006 version. Section 825.302 and related regulations have since been amended. The 2009 version applies to Gienapp and the 2013 version to current applications. These amended regulations supersede *Righi* to the extent of any differences.) But Gienapp's application is covered by §825.303, which deals with unforeseeable leave. And §825.303, unlike §825.302, does *not* require employees to tell employers how much leave they need, if they do not know yet themselves.

Instead of requiring notice at the outset, §825.303(c) tells workers to comply with employers' policies. Employers may, for example, require updated estimates about how long leave will last. The employee in *Righi* lost after turning off his cell phone and not responding to his employer's repeated requests for information. Harbor Crest told Gienapp to call in monthly, and it is conceded that she did so. If Harbor Crest asked for any extra information during those calls, the record does not reflect undisputed details; we assume therefore that Gienapp complied with Harbor Crest's policies. We have already explained why we must assume that Harbor Crest's professed attempts to reach Gienapp by phone, or though her sister, either never occurred or were unsuccessful. On the summary judgment record, therefore, it is not possible to conclude that Gienapp fell short under §825.303(c). What seems to have happened instead is that Chattic drew an unwarranted inference from the physician's statement in the original form and confused the anticipated duration of the daughter's need for care with the anticipated duration of Gienapp's absence from work, even though these are logically distinct. Harbor Crest is not entitled to summary judgment on a theory that Gienapp failed to provide essential information.

Harbor Crest offers two other arguments in support of its judgment. It is entitled to do this, without the need to file a cross-appeal, even though the district court did not consider them. See, e.g., *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976). Both lines of argument maintain that Gienapp did not qualify for *any* FMLA leave. If so, the date-of-return issue becomes irrelevant.

Section 2612(a)(1)(C) provides that an employee may take time off "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." No one doubts that Gienapp took leave as a result of the illness of her "daughter" as ordinary people understand that word: Trish Hoff is Gienapp's biological child.

Harbor Crest observes that Hoff was emancipated, an adult, and married; it contends that such a person does not count as a "daughter" no matter how normal people use that word. "Son or daughter" is a defined phrase. It means:

> a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis, who is—
>
> > (A) under 18 years of age; or
> >
> > (B) 18 years of age or older and incapable of self-care because of a mental or physical disability.

29 U.S.C. §2611(12). Trish Hoff is over 18 but in 2011 was "incapable of self-care because of a … physical disability." She meets the definition of a "daughter". But Harbor Crest does not want us to apply the full statutory definition. It contends instead that Hoff does not count as a "daughter" because she was married and Gienapp was no longer "standing in loco parentis". That snippet of the statute is not the sole means of qualifying a person as a child, however.

Any biological child is treated as a "son or daughter" if either the age condition or the disability condition is satisfied. The "in loco parentis" language is preceded by "or". That is to say, a biological child *or* an adopted child *or* a foster child *or* a stepchild *or* a legal ward *or* a person over whom the employee is acting in loco parentis can be a statutory "son or daughter"; it is unnecessary to satisfy *all* of these possibilities. That Gienapp is no longer in loco parentis to Trish Hoff does not make her less Gienapp's biological child (or more capable of self-care).

Just a few months ago, we rejected an invitation to restrict the FMLA's definition of "care" by selective omission of statutory terms. *Ballard v. Chicago Park District*, 741 F.3d 838 (7th Cir. 2014). It is no more appropriate to limit the FMLA's definition of son or daughter. The United States Code is enormous and contains many commands or limitations that might not be reenacted if Congress focused on how the language would work in practice. Our job is to enforce the text on the books, not to add or subtract qualifiers that a litigant thinks would make the statute more sensible. See, e.g., *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2033–34 (2014). (Whether defendants' position *would* make the statute more sensible is not a subject on which we express any view.)

Harbor Crest's other theme is that Gienapp did not supply "care" for Trish Hoff at all. As Harbor Crest sees things, physicians and Hoff's husband did that. According to Harbor Crest, what Gienapp did was care for her grandchildren, reducing the burdens on those who were caring for her daughter. The FMLA allows leave to care for children and

parents, but not grandchildren and grandparents. That disqualifies Gienapp, the argument wraps up.

To the extent Harbor Crest maintains that Gienapp was not entitled to leave because she was not Hoff's "primary" caregiver, the argument lacks support in the statute. Employees are entitled to leave to provide "care" for their children, 29 U.S.C. §2612(a)(1)(C); the word "primary" is just not there, and we can't add it, for reasons explained above and in *Ballard*. But to the extent Harbor Crest contends that Gienapp provided care *exclusively* for her grandchildren, the argument has a statutory basis. What it lacks is a basis in undisputed fact. Gienapp contends that she provided care for both her child and her child's children. That position cannot be rejected on summary judgment. Nor could we reject as a matter of law an argument that taking care of Hoff's children supplied some "care" to Hoff herself; that depends on what Gienapp did and whether caring for the grandchildren had a potential benefit for the daughter's health.

We have so far identified three issues on which material disputes of fact could prevent summary judgment: (1) did Harbor Crest ask Gienapp in February 2011 (before hiring her replacement) to supply an estimated date for her return to work?; (2) did Gienapp ever tell Harbor Crest that she would not return on or before April 1?; (3) did Gienapp provide care for her daughter as well as for her grandchildren? It remains to decide whether Harbor Crest has done what is necessary to preserve these questions for further proceedings in the district court.

The first and second issues were put into dispute by Chattic, who testified by deposition that Gienapp told her by phone during February 2011 that she planned to stay home

as long as Hoff needed care, which could be July 2011 or later. Gienapp has denied that she said any such thing. But although there was a material dispute in the district court, Harbor Crest's appellate brief lets the matter drop. Its statement of facts asserts that "the *only* information regarding the expected duration of leave [with] which Chattic was ever provided was the verification form itself" (emphasis in original). The brief contains several similar assertions. Although it also relies on Chattic's deposition, it does so only to support the proposition we have just quoted. Harbor Crest has thus waived on appeal any contention that Gienapp told Chattic in February 2011, or at any other time, that she would not return by the April 1 deadline.

On the third issue, by contrast, Harbor Crest preserved its position in its appellate brief. Its statement of facts asserts that "Gienapp had never been at her daughter's bedside caring for her daily needs but, instead, staying at Hoff's home, freeing her son-in-law to go to work, and taking care of her grandchildren." This is consistent with Chattic's deposition. She testified that Gienapp "led me to believe … that she was taking care of her grandkids" rather than her daughter. Harbor Crest asserted in its motion for summary judgment that Gienapp was not providing any care to Hoff.

Now "led me to believe" may be inadequate; it matters what Gienapp said, rather than just what impression Chattic took away. More important, Harbor Crest conceded in the district court that Gienapp provided *some* care to her daughter. It accepted her submission that "[w]hile on leave *and caring for her daughter*, Gienapp also found herself in a position to help care for her daughter's children" (emphasis added). The FMLA does not treat care of grandchildren as disquali-

fying, if the employee also cares for an eligible relative such as a daughter.

Harbor Crest's concession in the district court requires us to frame the issue as whether a combination of assistance to one's daughter, plus care of grandchildren that could take a load off the daughter's mind and feet, counts as "care" under the Act. To this the answer must be yes. *Ballard* explains that care includes psychological as well as physical assistance to a covered family member. See also 29 C.F.R. §825.116 (defining "care"). Harbor Crest has never contended that Gienapp's assistance to other members of the family could not have given her daughter a mental boost. A person who knows that her family is well looked-after has an important resource in trying to recover from a medical challenge. Doubtless some forms of familial assistance are too tangential to hold out a prospect of psychological benefits to a covered relative, but Harbor Crest does not contend that Gienapp's aid was too slight to qualify. Given its concession in the district court, Harbor Crest must stake its all on the proposition that devoting *any* time to the care of grandchildren disqualifies a person from FMLA leave. That's wrong.

It follows that no material dispute of fact remains for resolution in the district court. Gienapp is entitled to summary judgment in her favor. The judgment of the district court is reversed, and the case is remanded with instructions to craft an appropriate remedy.